IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00845-GPG-KAS
        Consolidated with Civil Action No. 24-cv-01959-GPG-KAS

DONTAE HINES, also known as Dontae D. Hines,

        Plaintiff,

v.

CITY AND COUNTY OF DENVER,
EMMETT HURD,
DERYCK DE ARAUJO,
CHRISTOPHER COCHRAN,
ANTHONY BOVA,
N. REID,
STAR MOTEL,
UNKNOWN DPD SGT.,
UNKNOWN DPD OFFICER #1.
UNKNOWN DPD OFFICER #2,
UNKNOWN DPD OFFICER #3,
DENVER HEALTH EMT #1,
DENVER HEALTH EMT #2,
UNKNOWN DENVER SHERIFF,
UNKNOWN DENVER SHERIFF MEDICAL,
UNKNOWN DPD RECRUIT #1, and
UNKNOWN DPD RECRUIT #2,

        Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____
**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

        This matter is before the Court on the **Amended Motion to Dismiss** [#27],[1] filed

by Defendant City and County of Denver, and on the **Amended Motions to Dismiss**

_____

[1] "[#27]" is an example of the convention the Court uses to identify the docket number assigned
to a specific paper by the Court's case management and electronic case filing system (CM/ECF).
This convention is used throughout this Recommendation.

[#28], filed by Defendants Emmett Hurd ("Hurd"), Deryck de Araujo ("De Araujo"), Christopher Cochran ("Cochran"), and Anthony Bova ("Bova"). Plaintiff, who proceeds in this matter as a pro se litigant,[2] did not file timely Responses. *See Minute Order* [#128]. The Motions [#27, #28] have been referred to the undersigned for a Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.C.COLO.LCivR 72.1(c)(3). *See* [#29]. The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons stated below, the Court **RECOMMENDS** that Defendant City and County of Denver's Motion [#27] be **GRANTED** and that Defendants Hurd, De Araujo, Cochran, and Bova's Motion [#28] be **GRANTED in part and DENIED in part**.

## I. Background

Plaintiff initiated this action on March 26, 2024. *Compl.* [#1]. The operative Fourth Amended Complaint [#10] was filed on June 17, 2024.[3] *See Minute Order* [#127]. On October 30, 2024, this matter was consolidated with *Hines v. City and County of Denver*, No. 24-cv-01959-GPG-KAS (D. Colo.), wherein Plaintiff again named as defendants the City and County of Denver, Hurd, De Araujo, Cochran, Bova, N. Reid ("Reid"), the Star Motel, and various unidentified Defendants. That action arose from the same three police-

---

[2] The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should neither be the pro se litigant's advocate nor "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

[3] For the purposes of resolving the Motions [#27, #28], the Court accepts as true all well-pleaded, as opposed to conclusory, allegations made by Plaintiff in his pleadings. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

interaction incidents at issue herein and was originally filed in state court before its removal here.[4] *See Notice of Removal* [#1, in No. 24-cv-01959-GPG-KAS].

With respect to the first incident underlying this lawsuit, Plaintiff alleges that, on May 21, 2023, Defendants Hurd and De Araujo, who are both officers with the Denver Police Department ("DPD"), pulled him over while he was driving, allegedly due to an expired license plate.[5] *Id.* at 11. Plaintiff provided the officers with his identification, vehicle registration, and proof of valid insurance. *Id.* Defendant Hurd reviewed Plaintiff's information, returned it to him, and then proceeded to search the vehicle without Plaintiff's consent, a warrant, or justifiable probable cause, Plaintiff asserts. *Id.* at 12. Plaintiff alleges that he was exercising his right to freedom of speech when he explained to both officers that his registration was legitimate and that he believed DPD was profiling and trying to harass him "unconstitutionally." *Id.* Defendant Hurd told Defendant De Araujo to watch Plaintiff while Defendant Hurd forced both passengers from the vehicle and searched it. *Id.* During the search, the "word gun was verbalized," causing both officers to pull out their service weapons. *Id.* at 12. Plaintiff states that he was later "questioned repeatedly at the lock up about a firearm found in [his] car . . . [which] was later determined . . . not to belong to [Plaintiff.]" *Pl.'s Aff.* [#10-1] at 2.[6]

---

[4] While the Court generally refers to the Fourth Amended Complaint [#10] from No. 24-cv-00845-GPG-KAS throughout this Recommendation, it has also considered the Complaint [#3] from No. 24-cv-01959-GPG-KAS. For the most part, Plaintiff provides the same allegations in both cases. Where he has provided additional allegations in No. 24-cv-01959-GPG-KAS, they do not materially impact the Court's analysis below.

[5] Any charges arising from the traffic incident itself were later dismissed. *Fourth Am. Compl.* [#10] at 11.

[6] Plaintiff attached six exhibits to his Fourth Amended Complaint [#10]: (1) his unsigned, undated affidavit describing the events at issue, *see* [#10-1]; (2) an investigation letter dated October 18, 2023, by the Denver Department of Safety Administration Investigation Unit, which concerns an asserted Americans with Disabilities Act violation on September 21, 2023, when Plaintiff was in

Plaintiff was placed in handcuffs behind his back, to which he allegedly objected because he had a visible upper right extremity and spinal cord injury. *Fourth Am. Compl*. [#10] at 12. According to Plaintiff's affidavit, however, there was no mention of a purported spinal cord injury; he objected to the handcuffs and merely told officers he "had a preexisting injury to [his] right extremity."[7] *Pl.'s Aff.* [#10-1] at 1. Plaintiff "made it very clear that the restraints were hurting him and he was a member of a protected class because of his disability." *Fourth Am. Compl*. [#10] at 12. When Defendant Unknown DPD Sergeant arrived at the scene, the sergeant explained that it is DPD custom to handcuff detainees behind their back and that Plaintiff would not receive any accommodations. *Id*. Plaintiff was deemed a security threat, despite not resisting arrest. *Id*.

Plaintiff was then transported to the jail, and DPD officers continued the asserted excessive force because his restraints were not removed while processing. *Id*. at 12-13. Based on Plaintiff's continued complaints of pain, Denver Health Emergency Medical Technicians ("EMTs") were summoned. *Id*. at 13. Because the sheriff's deputies refused

---

the Denver Detention Center, *see* [#10-2]; (3) Denver Police Internal Affairs Bureau's investigation findings dated October 18, 2023, concerning an asserted sexual assault during the pat-down search and purported improper search of Plaintiff's vehicle, including screenshots of body-worn camera video of the August 9, 2023 incident, *see* [#10-3]; (4) photographs, case information sheet, and Denver Conduct Review Bureau investigation letter concerning the May 21, 2023 incident, *see* [#10-4]; (5) Retainer Agreement dated June 14, 2024, from Injury Reporting Consultants concerning a functional capacity evaluation of Plaintiff, as well as other medical and insurance records arising from his work-related injury to his right finger, *see* [#10-5]; and (6) DPD Office of Independent Monitor's investigation findings dated September 21, 2023, concerning the August 17, 2023 incident when Plaintiff was detained pending a motor vehicle theft investigation, *see* [#10-6]. The Court may consider documents attached to or incorporated by reference in a complaint when deciding a Rule 12(b)(6) motion to dismiss. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Thus, to the extent they are relevant, the Court has considered the attachments to Plaintiff's Fourth Amended Complaint [#10].

[7] According to a medical record attached to the Fourth Amended Complaint [#10], Plaintiff had suffered an industrial accident on February 7, 2023, which resulted in a fracture on the fourth digit of his right hand. *See* [#10-5] at 16.

to remove the restraints, per the unknown sergeant and policy, the EMTs were unable to perform a medical examination and left without providing any treatment, despite being aware of his disability. *Id.* The failure to remove the restraints caused Plaintiff more pain and suffering. *Id*. Once the handcuffs were finally removed, Plaintiff did not receive any medical treatment from the Denver Sheriff's Department. *Id*. at 13-14. He also alleges that, when he was booked into the jail, he was required to carry his mattress to assigned sleeping quarters, which is a custom at the jail, without an accommodation for his disability. *Id*. at 14.

The second incident underlying this lawsuit occurred on August 9, 2023, when Plaintiff was again pulled over by another DPD officer, Defendant Cochran, due to his purportedly defective vehicle registration. *Id*. at 14. DPD Officer Defendant Bova and Defendant Unknown New Recruits #1 and #2 assisted Defendant Cochran during the stop. *Id.* at 14-15. Defendant Cochran allegedly insisted it was normal practice to request a driver to step outside his vehicle to speak with officers regarding an infraction. *Id*. When Defendant Cochran asked permission to search Plaintiff's person and vehicle, Plaintiff declined, but the searches proceeded anyway. *Id*. at 15. During the pat-down of Plaintiff's person, Defendant Cochran "groped" him "in a sexually exploitation [sic] gesture urging Plaintiff to be submissive." *Id*. at 14-15. Defendant Cochran asked Plaintiff what the bulge in the area of his genitals was, Plaintiff confirmed the officer had made contact with his genitals, and Defendant Cochran "wanted to be sure, so he groped Plaintiff a second time to reassure himself of touching Plaintiff genitals," which Plaintiff alleges was excessive force. *Id*. at 15. Plaintiff alleges that he was told that the May 21, 2023 incident "made Plaintiff a target for Denver Police Department District 2" and asserts his freedom of

speech was implicated when he "verbalized his disapproval of being profiled and harassed unconstitutionally." *Id*. at 15. The search of the vehicle yielded "28 grams of legalized marijuana," which were placed on display on the trunk of his car purportedly "to aggravate, intimidate, harass, discriminate against, maliciously prosecute, shame, humiliate, disrespect, belittle, frame, discredit, discipline, and avenge in retaliation" for the May 21, 2023 incident. *Id*. Plaintiff asserts that the two unknown recruits were not trained properly and failed to report the misconduct by Defendant Cochran, who at the time "was acting as a trainer for the department." *Id*. at 15-16.[8]

The third incident underlying this lawsuit occurred on August 17, 2023 (eight days after the second incident), when Plaintiff was detained while staying at the Star Motel. *Id*. at 16. Plaintiff received a call from the Star Motel's front desk asking him to update his registry, and when he walked toward the office vending area, Plaintiff was detained by DPD Officer Defendant Reid and Unknown DPD Officers #1, #2, and #3 regarding purportedly false allegations of car theft. *Id*. He was grabbed and handcuffed behind his back, despite DPD allegedly broadly knowing of his disability already. *Id*. Plaintiff was placed in a hot police cruiser, where he was detained for a substantial period while the officers investigated his purported involvement with the stolen car. *Id*. Plaintiff alleges that the officers had relied on false information related to alleged criminal activity which led to Plaintiff's temporary detention in the police vehicle. *Id*. He further asserts that the DPD

---

[8] According to DPD correspondence Plaintiff attached to the Fourth Amended Complaint [#10], *see* [#10-3], the alleged sexual assault was investigated, and, after a review of the body-worn camera video, the video was found not to support Plaintiff's allegations, as Defendant Cochran had merely conducted a protective sweep or frisk of Plaintiff and the passenger compartment of the vehicle for weapons. The matter was presented to the District Attorney, who declined to initiate a criminal prosecution against Defendant Cochran.

used excessive force and conducted an illegal search of his personal property. *Id.*
Defendant Star Motel allegedly shared a video with DPD, but Plaintiff asserts that the
video did not support the allegations raised by the investigators. *Id.*[9]

In the Fourth Amended Complaint [#10], Plaintiff asserts the following seven
causes of action: (1) Count I: unlawful arrest, unlawful search and seizure, and excessive
force, in violation of the Fourth Amendment, *id.* at 11-16; (2) Count II: due process, in
violation of the Fourteenth Amendment, *id.* at 17-18; (3) Count III: retaliation, in violation
of the First Amendment, *id.* at 18-20; (4) Count IV: a constitutional claim for failure to train
and supervise, *id.* at 20-21; (5) Count V: cruel and unusual punishment, in violation of the
Eighth Amendment, *id.* at 21; (6) Count VI: violation of the Americans with Disabilities Act
("ADA"), *id.* at 21-22; and (7) Count Seven: "Department Policy Violations," based on (a)
failing to activate and preserve body-worn camera video footage on May 21, 2023, (b)
requiring inmates to carry mattresses without accommodation under the ADA, (c)
tolerating Defendant Cochran's alleged pattern of sexual misconduct, (d) detaining
Plaintiff prior to conducting a full investigation, (e) coercing a witness, and (f) detaining
Plaintiff, who was wearing a medical device. *Id.* at 22-23. Plaintiff does not make explicit
which claims are asserted against which specific Defendant(s). To the extent necessary,

---

[9] According to correspondence summarizing the investigation of the August 17, 2023 incident, as
attached by Plaintiff to the Fourth Amended Complaint [#10], the interaction with police that day
arose out of an investigation of a motor vehicle theft wherein the officer had indications Plaintiff
was possibly involved. *See* [#10-6] at 1. The investigation involved a review of body-worn camera
videos. *Id.* Officers detained him at the Star Hotel, and when interviewed, Plaintiff stated he knew
the person who had been driving the stolen vehicle and that person was in the hotel room Plaintiff
had come from. That person was ultimately arrested, and Plaintiff was released without charges.
When Plaintiff complained about his injury or defect to his arm after being released from the
handcuffs in which he had been placed, the officer asked Plaintiff to point out the defect, and
Plaintiff stated, "Don't worry about it."

the Court construes in the Analysis section which claim is asserted against which Defendant in the Fourth Amended Complaint [#10]. As relief, Plaintiff seeks damages.[10]

In the present Motions [#27, #28], Defendants City and County of Denver, Cochran, and Bova seek dismissal of all claims asserted against them in the Fourth Amended Complaint [#10], and Defendants Hurd and De Araujo seek dismissal of most claims asserted against them in the same pleading. However, these Motions [#27, #28] were filed on October 7, 2024, prior to consolidation of this action with No. 24-cv-01959-GPG-KAS on October 30, 2024. *Order* [#36]. Although many of the claims overlap or are identical in both actions, Defendants did not seek leave to file amended motions to dismiss to address the additional claims asserted against them in the later-filed lawsuit. Thus, the Court only addresses the claims from No. 24-cv-01959-GPG-KAS to the extent they are reiterations of the claims in No. 24-cv-00845-GPG-KAS.

## II. Standard of Review

Fed. R. Civ. P. 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint includes 'well-pleaded allegations, a court should assume their veracity and

---

[10] Although Plaintiff conclusorily states that he seeks "[i]njunctive relief, including [d]eclaratory relief and other appropriate equitable relief," he does not specify what that relief would be if it was granted. *Fourth Am. Compl.* [#10] at 23. Thus, the Court construes the Fourth Amended Complaint [#10] as only seeking the damages more specifically outlined by him. *See id.*

then determine whether they plausibly give rise to an entitlement to relief.'" *Carraway v. State Farm & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal citation and quotation marks omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

Further, "[b]ecause [42 U.S.C.] § 1983 . . . [is a] vehicle[ ] for imposing personal liability on government officials, [the Tenth Circuit] ha[s] stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013). Therefore, when bringing a § 1983 claim, a plaintiff must "'make clear exactly *who* is alleged to have done *what* to *whom*, . . . as distinguished from collective allegations[.]'" *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (quoting *Robbins v. Okla. ex rel. Dep't of Hum. Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008)). "When various officials have taken different actions with respect to a plaintiff, the plaintiff's facile passive-voice showing that his rights 'were violated' will not suffice." *Pahls*, 718 F.3d at 1225-26. "Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that 'defendants' infringed his rights."

*Id.* at 1226. Instead, the plaintiff must "identify specific actions taken by particular defendants" to state a § 1983 claim. *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998).

### III. Analysis

### A.    Defendant City and County of Denver's Motion [#27]

As best as the Court can discern, Plaintiff's central claim asserted against Defendant City and County of Denver is Count IV, titled "Failure to Train or Supervise." *Fourth Am. Compl.* [#10] at 20. Further, Plaintiff may be asserting Count VI under the ADA against Defendant City and County of Denver, given his assertion thereunder that "these agencies" failed to accommodate his purported disability, to which he appears to be referring to, at a minimum, DPD and the Denver Sheriff's Department's jail. *Id.* at 22.

### 1.    Count IV: Failure to Train or Supervise

Denver moves to dismiss the Amended Complaint [#10] for failure to state a *Monell* claim pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff has failed to adequately allege that any Denver policy caused Plaintiff's alleged injuries. *Motion* [#27] at 2 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-92 (1978)).

A municipality "is a 'person' subject to § 1983 liability." *McDonald v. Wise*, 769 F.3d 1202, 1215 (10th Cir. 2014) (citing *Monell* 436 U.S. at 690-91). "Municipal liability requires an underlying constitutional violation." *Buchanan v. Turn Key Health Clinics, LLC*, No. 22-7029, 2023 WL 6997404, at *7 (10th Cir. Oct. 24, 2023). "A core principle of *Monell* liability is that municipal entities are liable for only their own actions and not vicariously liable for the actions of their employees." *Crowson v. Washington County*, 983 F.3d 1166, 1191 (10th Cir. 2020). However, "[b]ecause municipalities act through officers, ordinarily there

will be a municipal violation only where an individual officer commits a constitutional violation." *Id.*

In addition to the requirement that there be a constitutional violation, a plaintiff must adequately allege three other elements to state a municipal liability claim: "(1) an official policy or custom, (2) causation, and (3) deliberate indifference." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1145 (10th Cir. 2023).

Regarding the first element, an official policy or custom may include:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller v. City and County of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (citation omitted).

Regarding the second element, i.e., causation, "the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (internal quotation marks omitted). The policy or custom must be "the 'moving force' behind the plaintiff's deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 400 (1997).

Regarding the third element, "[a] local government policymaker is deliberately indifferent when he 'deliberately' or 'consciously' fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury

of the type experienced by the plaintiff." *Hollingsworth v. Hill*, 110 F.3d 733, 745 (10th Cir. 1997). "In the municipal liability context, deliberate indifference is an objective standard that may be satisfied if the risk is so obvious that the official should have known of it." *Buchanan*, 2023 WL 6997404, at *8 (internal quotation marks omitted) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 n.5 (10th Cir. 1998)).

Here, to the extent Plaintiff's pleading can be interpreted as asserting a *Monell* claim based on a custom or policy, the Court finds that Plaintiff has not adequately identified a specific municipal policy or custom under which an employee acted, that such a policy or custom was the moving force behind his asserted constitutional injuries, or that the maker of any such policy was deliberately indifferent. In addition, Plaintiff merely alleges in conclusory fashion that Denver failed to train or supervise without any supporting specifics as to the purported training deficiencies. To state a *Monell* claim based on the failure to train, "a plaintiff must sufficiently allege that the failure 'amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Rehberg v. City of Pueblo*, No. 10-cv-00261-LTB-KLM, 2012 WL 1326575, at *4 (D. Colo. Apr. 17, 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). However, a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) (discussing how a policy of inadequate training is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*").

The Fourth Amended Complaint's allegations concerning officer training do not plausibly allege a specific training deficiency which led to Plaintiff's constitutional injuries.

The Complaint [#10] does not state any facts concerning how the officers were trained, who trained them, why their training was constitutionally deficient, or how Plaintiff's injuries could have been avoided with different training. Plaintiff alleges that, on May 21, 2023, the Unknown DPD Sergeant did not properly supervise Defendants Hurd and De Araujo because they blatantly disrespected and infringed on his constitutional rights, that the Unknown DPD Sergeant failed to address their lack of training in the field because they made false police reports, and that there was a "custom or policy allowing a disabled individual to be restrained for several hours at the request of" the Unknown DPD Sergeant. *Fourth Am. Complaint* [#10] at 20. He further alleges that there was a "malicious prosecution agenda within the department," that Defendant Cochran was not trained to report the details of the August 9, 2023 incident, that Defendant Bova did not report Defendant Cochran's behavior, and that the Unknown DPD Recruits #1 and #2 were not properly trained because they did not report the incidents. *Id.*

However, a plaintiff cannot state a *Monell* liability claim based on the failure to train by generally alleging that employees were not properly trained. Instead, a plaintiff must allege how the employees were trained and how the training was deficient. *See, e.g.*, *Sexton v. City of Colorado Springs*, 530 F. Supp. 3d 1044, 1072 (D. Colo. 2021) (finding the plaintiff's failure-to-train allegations insufficient where the plaintiff did not state how the officers were trained and who trained them); *Cook v. Whyde*, No. 20-cv-02912-PAB-STV, 2021 WL 4459051, at *16 (D. Colo. Sept. 29, 2021) (dismissing *Monell* claim for failure to allege specific facts concerning how the defendants were trained or why the training was deficient); *Est. of Lobato by & through Montoya v. Correct Care Sols., LLC*, No. 15-cv-02718-PAB-STV, 2017 WL 1197295, at *7 (D. Colo. Mar. 31, 2017) ("Notice of

particular deficiencies in a training program is the crux of a failure-to-train theory[.]"); *Bark v. Chacon*, No. 10-cv-01570-WYD-MJW, 2011 WL 1884691, at *3 (D. Colo. May 18, 2011) (dismissing municipal liability claim where plaintiff had "generally allege[d]" that the individual defendants were not properly trained but had not "allege[d] specific deficiencies in training and supervision, or explain[ed] how the incident described in the Amended Complaint could have been avoided with different or better training and supervision"). Plaintiff has not met this pleading standard.

Accordingly, the Court **recommends** that Defendant City and County of Denver's Motion [#27] be **granted** to the extent that Count IV be **dismissed** as to this Defendant.[11]

## 2.    Count VI: ADA

In Count VI, Plaintiff asserts that an ADA violation occurred on May 21, 2023, when he was wearing a medical brace and was forced to wear hand cuffs and restrained, contending that this was a failure to accommodate his disability. *Fourth Am. Compl.* [#10] at 21-22. He further alleges his disability was not accommodated when he was required to carry a jail mattress and that Denver Health, in its provision of medical care at the jail on behalf of Defendant City and County of Denver, did not meet the appropriate standard of care. *Id*. He states he was wearing a medical brace on his right extremity when he was placed in restraints by officers on August 17, 2023, and that the various arms of the City conspired to cause him injury, disregarding his disability. *Id*.

"To state a claim under Title II of the ADA, [42 U.S.C. § 12131, et seq.,] a plaintiff must allege: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services,

---

[11] In Section III.C. below, the Court addresses whether amendment of Plaintiff's claims from the Fourth Amended Complaint [#10] should be permitted as to any Defendant.

programs, or activities, or was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *A.V. ex rel. Hanson v. Douglas Cnty. Sch. Dist. RE-1*, 586 F. Supp. 3d 1053, 1062 (D. Colo. 2022) (citing *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999)). Jails are "public entities" covered by Title II. *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007).

An ADA claim may arise when police "fail[ ] to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees." *Gohier*, 186 F.3d at 1220-21. "For example, if a disabled individual uses a wheelchair, courts might require law enforcement officers to secure the wheelchair when making an arrest." *J.H. ex rel. J.P. v. Bernalillo County*, 806 F.3d 1255, 1261 (10th Cir. 2015). Here, while Plaintiff alleges he told the various individual Defendants that he had a disability, there are no allegations that Plaintiff identified or asserted to any officer the need for any specific, reasonable accommodation. *See Robertson*, 500 F.3d at 1196 (10th Cir. 2007) (reasoning that "a public entity must have knowledge of the individual's disability *and* the individual's need for accommodation") (emphasis added). Thus, Plaintiff has failed to adequately allege an ADA violation based on the purported failure of officials to reasonably accommodate his alleged disability. *Id.* at 1261-62.

Accordingly, the Court **recommends** that Plaintiff's Count VI asserting violation of the ADA be **dismissed** to the extent asserted against Defendant City and County of Denver.

**B.      Defendants Hurd, De Araujo, Cochran, and Bova's Motion [#28]**

Defendants Hurd and De Araujo were only involved in the May 21, 2023 incident,
and Defendants Cochran and Bova were only involved in the August 9, 2023 incident.
*See Fourth Am. Compl.* [#10] at 11-16. Thus, the discussion of Plaintiff's claims in this
Section III.B. pertain only to these two incidents.

**1.      Count VI: ADA**

Although not entirely clear, Plaintiff's Count VI under the ADA may be asserted
against Defendants Hurd and De Araujo, given that Plaintiff refers to his being handcuffed
during the May 21, 2023 incident. *Fourth Am. Compl.* [#10] at 21-22. To the extent this
claim is brought against them, they argue that it should be dismissed.[12]

As noted in Section III.A.2., "[t]o state a claim under Title II of the ADA, a plaintiff
must allege: (1) that he is a qualified individual with a disability; (2) that he was either
excluded from participation in or denied the benefits of some public entity's services,
programs, or activities, or was otherwise discriminated against by the public entity; and
(3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's
disability." *Hanson*, 586 F. Supp. 3d at 1062. However, the ADA does not provide for
individual liability. *See Nichols v. Bd. of Cnty. Comm'rs of the Cnty. of Adams*, No. 23-cv-
00224-PAB-MEH, 2024 WL 729673, at *22 (D. Colo. Feb. 21, 2024) (collecting cases).
Because individual defendants sued in their personal capacities are not subject to suit
under the ADA, this claim must be dismissed.

---

[12] Plaintiff neither explicitly mentions nor appears to indirectly refer to the August 9, 2023 incident
here, and therefore this claim does not appear to be asserted against Defendant Cochran or
Defendant Bova. *See Fourth Am. Compl.* [#10] at 21-22. However, even if it were, the Court's
reasoning in this section equally applies to them.

Accordingly, the Court **recommends** that Plaintiff's Count VI regarding the ADA be **dismissed** to the extent asserted against Defendants Hurd and De Araujo.

### 2. Counts II and V: Fourteenth and Eighth Amendments

Defendants Hurd, De Araujo, Cochran, and Bova argue that Plaintiff's Eighth and Fourteenth Amendment claims are duplicative of his Fourth Amendment claim and should therefore be dismissed as to all of them. *Motion* [#28] at 14. They argue that "Plaintiff's due process and cruel and unusual punishment claims are inseparably intertwined in, if not completely identical to, his Fourth Amendment claims." *Id.* at 14-15 (citing *Neil v. City of Lone Tree*, No. 23-cv-01155-RMR-SBP, 2024 WL 4204142, at *16 (D. Colo. Aug. 28, 2024) (discussing the Fourth and Fourteenth Amendments in the context of an arrest case)). The Fourth Amendment provides an explicit textual source of protection against the individual Defendants' alleged actions related to the investigation and arrest. *See*, *e.g.*, *Montoya v. City and County of Denver*, No. 16-cv-01457-JLK, 2021 WL 1244264, at *14 (D. Colo. Mar. 4, 2021) (holding that "the Fourth Amendment, and not substantive due process, must be the guide for considering" a claim alleging that an affidavit in support of an arrest warrant "deceived the judicial officer into believing there was probable cause for [the plaintiff's] arrest"), *aff'd*, No. 21-1107, 2022 WL 1837828 (10th Cir. June 3, 2022).

Generally, "the Fourth Amendment protects against 'unreasonable searches and seizures' and pertains to the events leading up to and including an arrest of a citizen previously at liberty[.]" *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010) (emphasis omitted). The Eighth Amendment, on the other hand, applies to "those who have been convicted of crime[.]" *Colbruno v. Kessler*, 928 F.3d 1155, 1162 (10th Cir. 2019). "[W]hen neither the Fourth nor Eighth Amendment applies—when the plaintiff finds himself in the

criminal justice system somewhere between the two stools of an initial seizure and post-conviction punishment—we turn to the due process clauses of the Fifth or Fourteenth Amendment and their protection against arbitrary governmental action by federal or state authorities." *Porro*, 624 F.3d at 1326; *see also Colbruno*, 928 F.3d at 1162 ("For those in pretrial confinement . . . , claims regarding mistreatment while in custody generally do not come within the protection of the Fourth Amendment or the Eighth Amendment."). An "initial seizure," and with it the protections of the Fourth Amendment, ends, and the protections of the Fourteenth Amendment begin, when formal charges are brought or an arraignment is held. *Austin v. Hamilton*, 945 F.2d 1155, 1160 (10th Cir.1991), *abrogated on other grounds*, *Johnson v. Jones*, 515 U.S. 304 (1995).

Here, the Complaint [#10] is unclear as to whether formal charges were ever brought against Plaintiff, but it is clear that the relevant events relating to the May 21, 2023 incident all occurred before he was ever brought before a judge, i.e., during the arrest, booking, and initial hours at the jail. *See Fourth Am. Compl.* [#10] at 11-14. The relevant events relating to the August 9, 2023 incident all occurred during the traffic stop itself. *Id.* at 14-16. Thus, it appears for all of Plaintiff's claims concerning these two incidents that the Fourth Amendment is the appropriate constitutional amendment under which they should be analyzed.

Accordingly, the Court **recommends** that Plaintiff's Counts II and V regarding the Fourteenth and Eighth Amendments be **dismissed** to the extent asserted against the Defendants Hurd, De Araujo, Cochran, and Bova.[13]

---

[13] To the extent necessary, the Court analyzes the substance of Plaintiff's claims under the Fourteenth and Eighth Amendments in connection with its consideration of his Fourth Amendment claims.

### 3.    Qualified Immunity

Defendants Hurd, De Araujo, Cochran, and Bova argue that, to the extent Plaintiff seeks to hold them individually liable, they are entitled to qualified immunity. *Motion* [#28] at 5-11, 13-14. A qualified immunity defense "protects government officials from civil liability so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Arnold v. City of Olathe*, 35 F.4th 778, 788 (10th Cir. 2022) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (per curiam) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). To determine whether qualified immunity applies, the Court considers (1) whether "the officers' alleged conduct violated a constitutional right," and, if so, (2) whether "it was clearly established at the time of the violation, such that every reasonable official would have understood, that such conduct constituted a violation of that right." *Wise v. Caffey*, 72 F.4th 1199, 1205 (10th Cir. 2023) (citation and internal quotation marks omitted).

However, purely perfunctory argument that a party is entitled to qualified immunity is insufficient to deem the argument adequately raised on a motion to dismiss. *See, e.g.*, *Herren v. Lappegaard*, No. 18-cv-00209-CMA-KLM, 2018 WL 3999658, at *5 (D. Colo. July 30, 2018) ("Defendants . . . do not raise the issue of whether Plaintiff has met the second element of the qualified immunity analysis, i.e., that the right was clearly established at the time when the events underlying this incident occurred. Accordingly, the Court does not consider it and finds that Defendants are not entitled to qualified immunity on this claim.") (internal citation omitted), *report and recommendation adopted*,

2018 WL 3996601 (D. Colo. Aug. 20, 2018); *Fisher v. Glanz*, No. 14-CV-678-TCK-PJC, 2016 WL 1175239, at *11 n.11 (N.D. Okla. Mar. 24, 2016) (stating that the defendant's "lawyers are well-versed in this area of law, and the Court finds no need to sua sponte research and analyze aspects of the qualified immunity analysis they did not brief"); *Sarno v. Reilly*, No. 12-cv-00280-REB-KLM, 2013 WL 1151818, at *10 (D. Colo. Jan. 17, 2013) (finding that the defendant was not entitled to qualified immunity after failing to argue that plaintiff could not meet the second element of the qualified immunity analysis), *report and recommendation adopted*, 2013 WL 1151817 (D. Colo. Mar. 20, 2013). Here, although Defendants provide the general law regarding the "clearly established" prong of qualified immunity, they provide no argument or direct assertion pertaining thereto. Rather, the substance of their qualified immunity argument only addresses the first prong, i.e., whether Plaintiff has failed to state a claim. *See, e.g.*, *Motion* [#28] at 11 (regarding the Fourth Amendment claims), 12-13 (regarding the retaliation claim), 13-14 (regarding the excessive force claim).

### a.    Count I: Fourth Amendment

In Count I, Plaintiff alleges he was subject to unlawful search and seizure, unlawful arrest, and excessive force in violation of the Fourth Amendment. *Fourth Am. Compl.* [#10] at 11-16.

### i.    May 21, 2023 Incident

In the present Motion [#28], Defendants Hurd and De Araujo seek dismissal of only the excessive force portion of this claim, not the search-and-seizure or arrest portions. *See* [#28] at 1-2.

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Graham v. Conner,* 490 U.S. 386, 394-95 (1989). In evaluating an excessive force claim brought pursuant to the Fourth Amendment, Plaintiff must allege facts demonstrating that, under the totality of the circumstances, the use of force was unreasonable. *Sevier v. City of Lawrence, Kansas*, 60 F.3d 695, 699 (10th Cir. 1995); *see also Graham*, 490 U.S. at 396. The Fourth Amendment "does not require [police] to use the least intrusive means in the course of a detention, only reasonable ones." *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005) (citation omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (citation and quotation marks omitted).

Here, the thrust of Plaintiff's excessive force claim against Defendants Hurd and De Araujo appears to center around his being handcuffed. *See Fourth Am. Compl.* [#10] at 12. The Tenth Circuit has noted that "in nearly every situation where an arrest is authorized . . . handcuffing is appropriate." *Mglej v. Gardner*, 974 F.3d 1151, 1166 (10th Cir. 2020) (quoting *Fisher v. City of Las Cruces*, 584 F.3d 888, 896 (10th Cir. 2009)); *see also A.M. v. Holmes*, 830 F.3d 1123, 1155 (10th Cir. 2016) ("confidently conclud[ing]" that a reasonable officer in the defendant officer's position would have understood that handcuffing incident to a lawful arrest, "absent some injury specifically caused by the application of the cuffs[,] is lawful").

"An excessive force claim that includes a challenge to the '[m]anner or course of handcuffing' requires the plaintiff to show both that 'the force used was more than

reasonably necessary' and 'some non-de minimis actual injury.'" *Donahue v. Wihongi*, 948 F.3d 1177, 1196 (10th Cir. 2020) (quoting *Fisher*, 584 F.3d at 897-98). Here, Plaintiff's allegations concerning the manner in which he was handcuffed are primarily focused on his purported disability, rather than more than de minimis pain. He alleges he told officers he "had a preexisting injury to my right extremity." *Pl.'s Aff.* [#10-1] at 1. Plaintiff "made it very clear that the restraints were hurting him and he was a member of a protected class because of his disability." *Id.* However, the Court cannot construe these allegations to demonstrate a non-de minimis actual injury, as is required to state an excessive force claim based on handcuffing. *See Donahue*, 948 F.3d at 1196.

Accordingly, the Court **recommends** that Plaintiff's Count I, to the extent asserted as an excessive force claim, be **dismissed** as to Defendants Hurd and De Araujo.

### ii.    August 9, 2023 Incident

Defendants Cochran and Bova seek dismissal of all portions of Plaintiff's Fourth Amendment claim, i.e., unlawful search and seizure, unlawful arrest, and excessive force. *See Motion* [#28] at 2. However, the entirety of their argument rests on a viewing of the body-worn camera footage. *See id.* at 9-11. In other words, they ask the Court to look at the footage, determine that Plaintiff has not stated claims based on the content of that footage, and thus dismiss the claims.

Normally, when considering a motion to dismiss, the Court must disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment. *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). However, the Court may consider documents outside of the complaint on a motion to dismiss in certain limited instances. As is relevant here, the

Court may consider outside documents that are both central to Plaintiff's claims and to which Plaintiff refers in his complaint. *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997).

Defendants Cochran and Bova contend that, because Plaintiff has attached to his Fourth Amended Complaint [#10] screenshots of the body-worn camera footage from August 9, 2023, *see* [#10-3] at 3-4, 7-11, the Court is therefore allowed to consider the entirety of the underlying video footage without converting their motion to dismiss to a motion for summary judgment. *Motion* [#28] at 4 n.4. They have attached this footage to their Motion [#28]. *Defs.' Ex. A* [#28-1]; *Conventionally Submitted Material* [#31].

"Courts may consider documents or media which are referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Brandt v. Martin*, No. 18-cv-00480-NYW, 2019 WL 233312, at *1 n.1 (D. Colo. Jan. 16, 2019) (citing *Wasatch Equality v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016); *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010)); *see also Strepka v. Thompson*, 831 F. App'x 906, 908 (10th Cir. 2020) (considering a 911 call and video recording referenced in a complaint "because they are 'referred to by the [P]laintiff and central to his claim'" (quoting *Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999)).

As mentioned in footnote 6 above, Plaintiff attached six exhibits to his Fourth Amended Complaint [#10], including screenshots of body-worn camera video of the August 9, 2023 incident. *See* [#10-3]. Thus, the Court must consider whether this is enough of a basis on which to consider the entirety of the body-worn camera for this incident.

A materially similar issue was considered in *Rustgi v. Reams*, 536 F. Supp. 3d 802, 813-14 (D. Colo. 2021). There, the plaintiff had included screenshots from his jail's surveillance video in several paragraphs of his complaint. 536 F. Supp. 3d at 813. Because of that, the defendants asked the court to consider the entirety of the underlying video evidence in connection with their motion to dismiss. *Id*. The court "in its discretion" determined that consideration of the video evidence was inappropriate, particularly noting that "[o]f considerable significance here is the fact that while [the plaintiff] has included such screenshots in the pleading, the [c]ourt will not rely on those images in ruling on the [m]otion." *Id.*

Here, too, while the Court has reviewed the screenshots Plaintiff attached to his Fourth Amended Complaint [#10], they do not materially impact resolution of any claim in the Motion [#28]. Neither the Fourth Amended Complaint [#10] here nor the Complaint filed in the consolidated action (No. 24-cv-01959-GPG-KAS (D. Colo.)) directly refers to the August 9, 2023 body-worn camera footage as support for Plaintiff's claims. Rather, in this lead action, Plaintiff has merely attached several screenshots, without explanation, reference, or reliance on them in the pleading itself. While generally the Court may consider documents attached to or incorporated by reference in a complaint when deciding a Rule 12(b)(6) motion to dismiss, *Gee*, 627 F.3d at 1186, because the Court does not rely on Plaintiff's screenshots, the Court finds that consideration of the entirety of the body-worn camera footage provided by Defendants would be inappropriate. *See Rustgi*, 536 F. Supp. 3d at 813; *see also Turner v. Garcia-Serna*, No. 20-cv-00281-CMA-KMT, 2021 WL 1186670, at *5 (D. Colo. Mar. 31, 2021) (declining to consider bodycam footage in connection with a Rule 12(b)(6) motion to dismiss, where the plaintiff

mentioned bodycam footage in the complaint, but did not discuss its contents or rely on it to support his claims). Because the Court declines to consider the body-worn camera footage, and because Defendants Cochran and Bova's arguments rest solely thereon, the Court finds that they are not entitled to qualified immunity at this time and that the Motion [#28] must be denied as to the Fourth Amendment claims.

Accordingly, the Court **recommends** that the Motion [#28] be **denied** to the extent Defendants Cochran and Bova seek dismissal of Plaintiff's Count I regarding unlawful search and seizure, false arrest, and excessive force.

### b.    Count III: First Amendment

Defendants Hurd and De Araujo seek dismissal of this claim with respect to their involvement in the May 21, 2023 incident. *Motion* [#28] at 1. Defendants Cochran and Bova seek dismissal of this claim with respect to their involvement in the August 9, 2023 incident. *Id.* at 7-9, 11-13.

To state a claim for First Amendment retaliation, Plaintiff must allege:

(1) that he was engaged in constitutionally protected activity; (2) that the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendants' adverse action was substantially motivated as a response to his exercise of constitutionally protected conduct.

*Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1227 (10th Cir. 2020) (quotation and brackets omitted). Further, "a First Amendment retaliation claim based on a false arrest requires a separate 'threshold showing'—generally, a plaintiff must show a false arrest." *Id.* (citing *Nieves v. Bartlett*, 587 U.S. 391, 407-08 (2019)). In other words, "[t]he plaintiff pressing a retaliatory arrest claim must plead . . . the absence of probable cause for the arrest." *Nieves*, 587 U.S. at 402.

### i.    Defendants Hurd and De Araujo

Although Defendants Hurd and De Araujo technically seek dismissal of this claim, *see Motion* [#28] at 1, the Motion contains no argument or further reference to its dismissal. In the absence of any such argument, the Court finds that the Motion [#28] should be denied as to dismissal of this claim against them.

### ii.    Defendant Bova

Although Defendant Bova seeks dismissal of this claim against him, the Court does not construe the Fourth Amended Complaint [#10] as asserting this claim against him, even upon a liberal reading of the claim. His name is not explicitly mentioned anywhere in this claim, and Plaintiff's discussion of the August 9, 2023 incident only concerns Defendant Cochran's actions. Thus, because the Fourth Amended Complaint [#10] cannot be construed to be asserting this claim against Defendant Bova, any argument regarding its dismissal is moot.

### iii.    Defendant Cochran

Here, the majority of Defendant Cochran's argument again relies on a viewing of the body-worn camera footage, which, as discussed above, the Court has declined to do. *See Motion* [#28] at 7-9, 12-13. Otherwise, Defendant Cochran argues that "Plaintiff fails to allege that he was engaged in any constitutionally protected activity that would have triggered this traffic stop" and that "[n]othing in Plaintiff's [Fourth] Amended Complaint alleges that the stop was in any way motivated by constitutionally protected activity and thus he cannot prove a First Amend[ment] retaliation claim." *Id.* at 12. The Court disagrees. Plaintiff alleges that Defendant Cochran knew about the May 21, 2023 traffic stop and that "it was clear Plaintiff had engaged in a grievance process against Denver

Police Department District 2" based on that incident. *Fourth Am. Compl.* [#10] at 19. Plaintiff further expresses that he had been engaging in his "Constitutional right of free speech" prior to Defendant "Cochran's aggressive behavior during this traffic stop." *Id.* Further, Plaintiff has adequately alleged that the stop was based on his utilization of the grievance process and that Defendant Cochran's aggressive behavior occurred due to Plaintiff's speech. *Id.* at 14-15, 19. Based on these allegations, the Court finds that Plaintiff has, if just barely, stated a plausible retaliation claim at this time for purposes of resolving the Motion [#28].[14]

Accordingly, the Court **recommends** that the Motion [#28] be **denied** with respect to Plaintiff's Count III regarding retaliation under the First Amendment against Defendants Hurd, De Araujo, and Cochran.

### c.    Count IV: Failure to Intervene/Supervisory Liability

Count IV asserts that Defendant Bova did not properly supervise Defendant Cochran on August 9, 2023. *Am. Compl.* [#10] at 21.[15]

To succeed on a claim of supervisory liability, "the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights." *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (quoting *Jenkins v. Wood*, 81 F.3d 988, 994-95 (10th Cir. 1999)) (internal quotation marks omitted). The Tenth Circuit Court

---

[14] Because Defendant Cochran's qualified immunity argument focuses solely on the first prong and does not address the "clearly established" second prong of the analysis, the Court finds that Defendant Cochran is not entitled to qualified immunity on this claim at this time. However, he may, of course, raise it later at summary judgment, if he so chooses.

[15] This claim also appears to have been asserted against Defendant City and County of Denver, as discussed in Section A.1. above, and against Defendant Unknown DPD Sergeant for failure to properly supervise Defendants Hurd and De Araujo. *Fourth Am. Compl.* [#10] at 20-21. Thus, here, the Court only addresses the claim as to Defendant Bova.

of Appeals has further clarified that a plaintiff alleging supervisory liability must plead that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). In other words, an "affirmative link" must exist between the subordinates' alleged unconstitutional acts and the express or implied adoption of a plan or policy. *Id*. at 1200-01.

Here, although he generally seeks dismissal of all claims against him, Defendant Bova provides no argument in the Motion [#28] regarding why this supervisory claim should be dismissed. In fact, he does not appear to reference this claim at all in the Motion [#28].

Accordingly, the Court **recommends** that the Motion [#28] be **denied** with respect to Plaintiff's Count IV regarding supervisory liability and Defendant Bova.

### d.    Count VII: Violation of Policy

Plaintiff asserts separately, and in overlapping fashion with his other claims, that DPD violated department policy and/or exhibited a pattern of unlawful conduct: (a) for failure to activate the required body-worn cameras on May 21, 2023, (b) by requiring inmates to carry mattresses without accommodation under the ADA, (c) by tolerating Defendant Cochran's alleged pattern of sexual misconduct, (d) detaining Plaintiff prior to conducting a full investigation, (e) coercing a witness, and (f) detaining Plaintiff, who was wearing a medical device. *Fourth Am. Compl.* [#10] at 22-23.

To the extent Plaintiff alleges that the various DPD officers failed to comply with their own department's policies, this is insufficient to state a violation of Plaintiff's rights.

A governmental entity's alleged failure to follow its own policies and procedures is actionable under 42 U.S.C. § 1983 "only if the . . . actions [at issue] fail to meet basic federal constitutional standards." *Rector v. City and County of Denver*, 348 F.3d 935, 947 (10th Cir. 2003). Here, Plaintiff has neither provided adequate allegations nor sufficient explanation to show how any of these purported policy violations individually or collectively failed to meet basic federal constitutional standards.

Accordingly, the Court **recommends** that Plaintiff's Count VII regarding failure to follow DPD policy be **dismissed** to the extent asserted against Defendants Hurd, De Araujo, Cochran, and Bova.

**C.    Whether Leave to Amend Should Be Permitted**

Finally, the Court considers whether Plaintiff should be given leave to file another amended complaint with respect to the claims herein recommended to be dismissed.

"'Rule 15 . . . was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result.'" *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting *United States v. Hougham*, 364 U.S. 310, 316 (1960)). The rule prescribes a liberal policy of amendment. *See generally* 6 WRIGHT & MILLER'S FEDERAL PRACTICE AND PROCEDURE §§ 1473, 1487 (3d ed. 2025 update). It directs that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of

amendment." *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir.1993). Prejudice to the opposing party is the single most important factor in deciding whether to allow leave to amend. *Minter v. Prime Equip. Co*., 451 F.3d 1196, 1207 (10th Cir. 2006).

Prior to the filing of this action, Plaintiff filed several other lawsuits with substantially similar, and in fact nearly identical, complaints. *See Hines v. Denver*, No. 23-cv-01303-LTB-SBP (D. Colo.), *Compl.* [#9]; *Hines v. Denver*, No. 23-cv-02091-LTB-SBP (D. Colo.), *Compl.* [#5]; *Hines v. Denver*, No. 23-cv-02214-LTB-SBP (D. Colo.), *Compl.* [#5]. All were dismissed for failure to show that the named defendants caused Plaintiff's asserted injuries, and all were dismissed without prejudice. *See Hines v. Denver*, 23-cv-01303-LTB-SBP (D. Colo), *Recommendation* [#17], *Order* [#18]; *Hines v. Denver*, 23-cv-02091-LTB-SBP (D. Colo.), *Recommendation* [#8], *Order* [#9]; *Hines v. Denver*, 23-cv-02214-LTB-SBP (D. Colo.), *Recommendation* [#10], *Order* [#12].

Prior to the filing of the Fourth Amended Complaint [#10], the Court advised Plaintiff that he needed to "include all the specific facts alleged against the individual police officers in the original Complaint, as well as additional facts to show that each Denver police officer listed as a Defendant in the case caption, including the unidentified Defendants, violated Plaintiff's constitutional rights." *Order* [#7] at 9. He was told that his constitutional claims against Defendant City and County of Denver "must allege specific facts to demonstrate he suffered an injury caused by a municipal policy or custom." *Id.* at 6. He was also informed that "vague and conclusory" allegations were insufficient. *Id.* at 10. In short, Plaintiff was provided with all the information necessary for him to know what was required to state a claim in his subsequently-filed Fourth Amended Complaint [#10],

and he has not done so with respect to the claims the Court has above recommended to be dismissed.

Given the lengthy history of multiple lawsuits and dismissals without prejudice, the many amendments and proposed amendments from the present case, as outlined in the Court's prior Minute Order [#127], and the fact that the Court previously told Plaintiff what information would be necessary to include in any amended complaint in order to state a claim, *see Order* [#7], the Court finds that leave to amend should be not be permitted based on prejudice to Defendants, failure to cure deficiencies by amendments previously allowed, and futility of amendment. *See Frank*, 3 F.3d at 1365.

Accordingly, the Court **recommends** that all claims in the Fourth Amended Complaint [#10] herein recommended to be dismissed be **dismissed with prejudice** and that no further leave to amend be permitted. *See Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190-91 (10th Cir. 2014) (stating that, when a complaint fails to state claim under Rule 12(b)(6) and granting leave to amend would be futile, dismissal with prejudice is appropriate).

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that Defendant City and County of Denver's Motion [#27] be **GRANTED**, that Plaintiff's claims against it be **DISMISSED with prejudice**, and that Defendant City and County of Denver be **DISMISSED** from this lawsuit.[16]

---

[16] The Court notes that, based its review of Plaintiff's claims asserted in the later-filed, now-consolidated lawsuit, No. 24-cv-01959-GPG-KAS, no additional/new claims appear to have been asserted against Defendant City and County of Denver. Thus, dismissal of this Defendant remains appropriate.

IT IS FURTHER **RECOMMENDED** that Defendants Hurd, De Araujo, Cochran, and Bova's Motion [#28] be **GRANTED in part** and **DENIED** in part. The Court **recommends** that the Motion be **granted** to the extent that the following claims be **dismissed with prejudice**: (1) Count II, Fourteenth Amendment, against Defendants Hurd, De Araujo, Cochran, and Bova; (3) Count V, Eighth Amendment, against Defendants Hurd, De Araujo, Cochran, and Bova; (4) Count VI, ADA, against Defendants Hurd and De Araujo; and (5) Count VII, violation of department policy, against Defendants Hurd, De Araujo, Cochran, and Bova.[17]

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and

---

[17] If this Recommendation is adopted in full, the claims from the Fourth Amended Complaint [#10] remaining against Defendants Hurd, De Araujo, Cochran, and Bova will be as follows: (1) Count I, unlawful search and seizure and unlawful arrest, against Defendants Hurd and De Araujo; (2) Count I, unlawful search and seizure, unlawful arrest, and excessive force, against Defendants Hurd and Bova; (3) Count III, retaliation, against Defendants Hurd, De Araujo, and Cochran; (4) Count IV, failure to supervise, against Defendant Bova.

recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: August 2, 2025                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge